BOSTON LAW GROUP, PC

ATTORNEYS AT LAW

Main (617) 928-1800

825 BEACON STREET, SUITE 20
NEWTON CENTRE, MASSACHUSETTS 02459

Fax (617) 928-1802

**NOTICE OF BREACH**

VIA CERTIFIED MAIL # 7018 0360 0000 9498 1978

May 28, 2019

Mr. Luke Burtis
tinyBuild LLC
3831 152nd PL SE
Bothell, WA 98012

With a copy via email to:
John Crosetto, Esq.
GARVEY SCHUBERT BARER, P.C.
1191 Second Avenue
18-th Floor
Seattle, WA 98101-2939
jcrosetto@gsblaw.com

**RE: Breach of Development and Publishing Agreement dated March 29, 2018 between NIVAL and tinyBuild**

Dear Mr. Burtis,

Please be advised that this firm is the litigation counsel for NIVAL International, Ltd.

Reference is made to that certain Development and Publishing Agreement dated March 29, 2018 between NIVAL and tinyBuild (the "Agreement"). Notice is hereby given that tinyBuild is in breach of the Agreement because tinyBuild failed to pay the last $100,000 which was due prior to NIVAL's commencement of the "Gold master" development.

tinyBuild also breached the Agreement by claiming that its January 9th email constitutes proper notice under the Agreement. The facts describing this issue are set forth in my letter to Attorney Crosetto of even date herewith, a copy of which I attach hereto as Attachment A and incorporate herein by reference.

Very truly yours,

Val Gurvits

ATTACHMENT A

**BOSTON LAW GROUP, PC**

ATTORNEYS AT LAW

Main (617) 928-1800

825 BEACON STREET, SUITE 20
NEWTON CENTRE, MASSACHUSETTS 02459

Fax (617) 928-1802

**ER 408 COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

Via email to jcrosetto@gsblaw.com

May 28, 2019

John Crosetto, Esq.
GARVEY SCHUBERT BARER, P.C.
1191 Second Avenue
18-th Floor
Seattle, WA 98101-2939

**RE: NIVAL / tinyBuild Dispute**

Dear Mr. Crosetto,

Please be advised that this firm is the litigation counsel for NIVAL International, Ltd. Please direct all future correspondence pertaining to NIVAL to my attention. I am in receipt of your April 19, 2019 and your May 20, 2019 letters (the "Correspondence") and respond to them herein.

Your Correspondence makes certain assumptions that are demonstrably untrue. You claim that tinyBuild provided a "notice of breach on January 9, 2019." This communication (the "January 9 E-mail") was made by email and for reference, I attach it hereto as Exhibit A. As you know, Section 14(b) of the Development and Publishing Agreement dated March 29, 2018 between the parties (the "Agreement") calls for Publisher to provide "written notice" of any breach. Section 15(b) of the Agreement stipulates that "all notices"[…] be sent by facsimile with a copy by mail addressed to [Cyprus]. It is clear, therefore, that an email communication cannot be considered "written notice" under the contract.[1] Therefore, contrary to your unsupported conclusion, the

[1] This provision cannot be waived without a writing executed by the parties as per Section 15(e) of the Agreement and certainly was never waived by NIVAL.

January 9 E-mail does not constitute a proper "notice of breach" under the Agreement and NIVAL with good reason did not treat it as such. [2]

I should note that even if tinyBUILD delivered the January 9th email in accordance with the Agreement's notice provisions, that communication would still be defective as a breach notice because of tinyBUILD's utter failure to comply with the approval notice requirements of Section 5.3. Under Section 5.3, in the event that tinyBUILD objects to any deliverables, it must provident **written notice** together with a "reasonably detailed list of deficiencies." The January 9 E-Mail does not include a detailed list of deficiencies – in fact, it is impossible to ascertain from it exactly what issues tinyBUILD expects NIVAL to address.

As you know, Section 5.3 states that "In the event that [tinyBuild] fails to provide [NIVAL] with such written notification within thirty days of the date of delivery of an Unapproved Deliverable, [tinyBuild] shall be deemed to have accepted such Unapproved Deliverable." Because tinyBuild did not comply with the objection requirements of Section 5.3 by providing any proper notices of objection within 30 days of receiving any of NIVAL's deliverables, tinyBuild is deemed to have accepted all of the deliverables.

Lastly, even if one was to assume *arguendo* that tinyBuild complied with all of its notice obligations, NIVAL can prove that it complied with the Agreement by delivering software that conforms to its specifications and therefore complied with all of its contractual obligations. However, given the clear and demonstrable facts of this dispute as set forth above, I don't see how your threatened action could survive a motion for summary judgement, or even a 12(b)(6) motion.

Ironically, it is tinyBuild who is in breach of the Agreement. Having failed to provide proper notices, and having therefore accepted all of the deliverables, tinyBuild has failed to make the final $100,000 payment to NIVAL. Attached hereto as Exhibit B is NIVAL's Notice of Breach, which I am simultaneously sending to tinyBuild in accordance with Section 15(b)'s notice requirements.

Given the above, I would consider any action filed by tinyBuild to be frivolous and in violation of Rule 11. Moreover, the event that this dispute must be litigated, NIVAL shall have the right to receive from tinyBuild the last $100,000 installment. In addition, under Section 13(c) of the Agreement, tinyBuild must indemnify NIVAL for NIVAL's costs and expenses, including legal fees, incurred in connection to any "action or proceeding between [tinyBuild] and [NIVAL.]" Given that NIVAL and its personnel are located in Europe, I expect NIVAL's litigation expenses to exceed $200,000, and so NIVAL's recovery against tinyBuild will easily exceed $300,000. Assuming that tinyBuild incurs similar costs on its side, it is about to embark on an unwinnable legal journey that will ultimately cost tinyBuild over half a million dollars.[3]

---

[2] It is telling that when NIVAL objected to the form of notices, tinyBuild mistakenly claimed that under Washington state law an email is considered a "writing." Although generally that may be true, the Agreement specifically calls for notices to be on paper and by fax and therefore e-mails are specifically excluded.

[3] Your threat of a multi-million claim for "lost profits" is not credible given that (a) NIVAL is not in breach of the Agreement and (b) under Washington law proving future profits requires a reasonable estimation of damages based

Based on the foregoing, NIVAL will not make any payments to tinyBuild, but does expect tinyBuild to pay the last installment of $100,000. In the alternative, NIVAL would agree to forego the last installment and a small reduction of the royalties to which it is entitled under Sections 9 and 10 of the Agreement, subject to an acceptable mutual general release including a non-disparagement clause.

This letter is not intended to constitute, nor shall it be deemed to constitute, a full statement of all facts, rights or claims relating to this matter, nor is it intended, nor shall it be construed as, a waiver, release or relinquishment of any defenses, rights or remedies available to my client, whether legal or equitable, all of which are hereby expressly reserved.

Very truly yours,

Val Gurvits

---

on an analysis of the profits of identical or similar businesses operating under substantially the same market conditions. *See No Ka Oi Corp. v. Nat'l 60 MinuteTune, Inc., 71Wash.App. 844, 849, 863 P .2d 79 (Wash. App. Ct. 1993);* tinyBuild's claim to lost profits is so unforeseeable and speculative that it cannot be reasonably considered. *See Kaech v. Lewis Cty. Pub. Util. Dist. No. 1, 106 Wash. App. 260, 276, (2001).*