THE HONORABLE THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| tinyBuild LLC, | Case No.:  19-cv-00805-TSZ |
| Plaintiff/Counterclaim Defendant, | |
| v. | **NIVAL INTERNATIONAL LIMITED'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Nival International Limited, | |
| Defendant/Counterclaim Plaintiff | |
| and | |
| Sergey Orlovskiy, | Noted for Consideration: |
| Defendant. | May 1, 2020 |

Defendant/Counterclaim Plaintiff Nival International Limited ("Nival"), by and through its undersigned counsel, hereby moves this honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts Four (Misappropriation of Trade Secrets) and Five (Conversion) of Plaintiff tinyBuild

1   LLC's First Amended Complaint.[1]  As detailed below, these causes of action

2   should be dismissed because (1) there are no protectible trade secrets at issue in

3   this case (whether alleged or otherwise), (2) misappropriation was not properly

4   alleged (nor could it be alleged), and (3) conversion is barred by the economic loss

5   rule.

6   ## I.    Legal Standard

7       To survive a motion to dismiss, a complaint must allege more than just

8   conclusions that are merely consistent with liability.  As the United States Supreme

9   Court held in *Ashcroft v. Iqbal*:

10      To survive a motion to dismiss, a complaint must contain sufficient

11      factual matter, accepted as true, to "state a claim to relief that is

12      plausible on its face." ...  A claim has facial plausibility when the

13      plaintiff pleads factual content that allows the court to draw the

14      reasonable inference that the defendant is liable for the misconduct

15      alleged....  The plausibility standard is not akin to a "probability

16      requirement," but it asks for more than a sheer possibility that a

17      defendant has acted unlawfully....  Where a complaint pleads facts that

18      are "merely consistent with" a defendant's liability, it "stops short of

19      the line between possibility and plausibility of 'entitlement to relief.'"

20      ...

21      In keeping with these principles a court considering a motion to dismiss

22      can choose to begin by identifying pleadings that, because they are no

23      more than conclusions, are not entitled to the assumption of truth. While

---

[1] This Motion is brought only on behalf of Defendant Nival.  Undersigned counsel do not, at current time, represent Defendant Sergey Orlovskiy in his personal capacity, who, at least as shown on the docket in this case, has not yet been served process in this case.

Boston Law Group, PC
825 Beacon Street, Suite 20, Newton MA 02459
617-928-1800

1  legal conclusions can provide the framework of a complaint, they must

2  be supported by factual allegations.

3  556 U.S. 662, 678-79 (2009) (internal citations omitted).

4       On a motion to dismiss pursuant to Rule 12(b)(6), "[t]he court typically

5  cannot consider evidence beyond the four corners of the complaint, although it

6  may rely on a document to which the complaint refers if the document is central to

7  the party's claims and its authenticity is not in question....  The court may also

8  consider evidence subject to judicial notice." *T-Mobile USA, Inc. v. Huawei*

9  *Device USA, Inc.*, 115 F.Supp.3d 1184, 1191 (W.D. Wash. 2015) (citing *Marder v.*

10 *Lopez*, 450 F.3d 445, 448 (9th Cir.2006) and *United States v. Ritchie*, 342 F.3d

11 903, 908 (9th Cir.2003)).

12 ## II.  Factual Background

13      Though Nival denies many of the allegations set forth in the First Amended

14 Complaint (Docket No. 36, the "FAC"), for the purposes of this Motion to

15 Dismiss, Nival acknowledges that the Court must accept all well-plead factual

16 matters as true.  Accordingly, Nival hereby summarizes the relevant allegations

17 therein.

18      On March 29, 2018, tinyBuild, Nival, and non-party Savvas Petras entered

19 into a Development and Publishing Agreement (the "Agreement").  FAC, ¶ 7.

20 Under the Agreement, Savvas Petras would design, and Nival would develop, a

21 video game (the "Product") that tinyBuild would then publish.  FAC, ¶ 8.

22 Although the Agreement is not attached to the FAC, it was attached to Nival

23 Answer and Counterclaim (Docket No. 11-1) and may be relied upon by this Court

24 as it is a document referred to by the FAC, central to tinyBuild's claims, and its

25 authenticity is not in question.  *See Marder*, 450 F.3d at 448.  A copy of the

26 Agreement is attached hereto as <u>Exhibit 1</u> for convenience.

27

28

Nival's Motion to Dismiss

tinyBuild alleges that Nival converted and misappropriated the source code to the Product when the relationship between the parties broke down and Nival did not release to tinyBuild the source code Nival developed.  FAC, ¶ 28.[2]  tinyBuild alleged causes of action against Nival for breach of the Agreement.  FAC, pp. 6-7.

In support of its claim of misappropriation, tinyBuild alleges that the Agreement "prevents Nival from using tinyBuild's source code and other proprietary, non-public information for purposes unrelated to the Product and from disclosing such information to a third party in the absence of a legal duty or court order."  FAC, ¶ 51.

The FAC also alleges that "On information and belief, Nival also retained tinyBuild's source code for purposes unrelated to the Product, including work for third parties."  FAC, ¶ 53.  The FAC provides no factual content regarding the alleged work unrelated to the Product or for third parties.

## III.   tinyBuild Failed to Properly Plead, and Cannot Properly Plead, a Cause of Action for Misappropriation of Trade Secrets

Count Four of the FAC is a cause of action for misappropriation of trade secrets in violation of the Washington Uniform Trade Secret Act and the Federal Defend Trade Secret Act.  FAC, p. 8.  As the Washington and Federal trade secret acts are substantially the same, at least for the purposes of this Motion, this Motion will focus on the specific language of Washington statute, all of which would also apply to the Federal statute.  *Compare* Wash. Code. § 19.108.010 *with* 18 U.S.C. § 1839.

---

[2] Nival denies that it had any obligation to release the source code to tinyBuild, or that tinyBuild has any ownership rights in the source code, and reserves all arguments on these issues.

Nival's Motion to Dismiss

Boston Law Group, PC
825 Beacon Street, Suite 20, Newton MA 02459
617-928-1800

4

### A.     Washington's Uniform Trade Secret Act

Codified as Washington Code Section 19.108.010 *et seq.*, Washington's Uniform Trade Secret Act prohibits misappropriation of trade secrets, and contains determinative definitions.

A "trade secret" means information that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Wash. Code § 19.108.010(4).

"Misappropriation" has the following cascading definition:

 (a)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i)   Used improper means to acquire knowledge of the trade secret; or

(ii)    At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was

(A)  derived from or through a person who had utilized improper means to acquire it,

(B)  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or

(C)  derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii)  Before a material change of his or her position, knew or had

reason to know that it was a trade secret and that knowledge of it had

been acquired by accident or mistake.

Wash. Code § 19.108.010(2).

Finally, the statute states that "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Wash. Code § 19.108.010(1).

## B.      tinyBuild Has Failed to Allege (and Cannot in Good Faith Allege) that Any "Trade Secret" is at Issue

The Uniform Trade Secret Act requires that any "trade secret" sought to be protected under the act be "subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Wash. Code § 19.108.010(4)(b).  *See*, *also*, 18 U.S.C. § 1839(3)(A) (requiring that an owner of purported trade secrets take reasonable measures to keep such information secret).

The only allegation in the FAC that in any manner relates to any efforts to keep secrecy is Paragraph 51, where tinyBuild alleges that "[t]he Agreement prevents Nival from using tinyBuild's source code and other proprietary, non-public information for purposes unrelated to the Product and from disclosing such information to a third party in the absence of a legal duty or court order."

However, the only provisions on the Agreement that relate to confidentiality and non-disclosure is Section 11 of the Agreement, which does ***not*** say what tinyBuild alleges it says.  In relevant part, Section 11 of the Agreement reads as follows:

(a)      Publisher, Developer and Designer recognize that, in connection

with the performance of this Agreement, each of them may disclose to

the other information about the disclosing party's business or activities,

which such party considers proprietary and confidential.  All of such

proprietary and confidential information of each party (which shall include, without limitation, all business, financial and technical information of each party, identities of customers, clients or licensees, proprietary source code and any other information whether oral or written which is not generally known or available to the public) is hereinafter referred to as "Confidential Information."

(b)     The party who receives Confidential Information agrees to maintain the confidential status for such Confidential Information, not to use any such Confidential Information for any purpose other than the purpose for which it was originally disclosed to the receiving party, and not to disclose any of such Confidential Information to any third party unless required by law or court order.

Agreement, § 11.

The source code is not "Confidential Information" as defined in the Agreement, and nothing in the Agreement obligates Nival to maintain the secrecy of the source code.  This is because, as alleged in the First Amended Complaint itself, ***Nival developed the source code itself and never received it from tinyBuild***. FAC, ¶ 8.  In fact, the main thrust of tinyBuild's remaining causes of action in this case and the relief it requests are that the Court order Nival to release the source code to tinyBuild because tinyBuild has never even seen it.  FAC, ¶¶ 28, 30, 35, 45, 53, 59 and Request for Relief, ¶ 6.

In other words, because tinyBuild never "disclose[d]" the source code to Nival, it cannot be deemed Confidential Information pursuant to Section 11(a) of the Agreement.  And even if it was "Confidential Information," because Nival never "receive[d]" the source code from tinyBuild, the obligations of secrecy under Section 11(b) are inapplicable.

1    Accordingly, tinyBuild has not properly alleged (nor does there exist) any

2    "efforts that are reasonable under the circumstances to maintain [the] secrecy" of

3    the source code, and therefore the source code cannot be the basis for a claim of

4    misappropriation because it is not a trade secret as defined by the statute. *Compare*

5    *with T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F.Supp.3d 1184, 1193

6    (W.D. Wash. 2015) ("T-Mobile described many security measures, including

7    limits on access to its clean room, limits on who could enter it, efforts to monitor

8    what occurred in the clean room, and efforts to immediately address Huawei's theft

9    of information from the clean room. That is more than enough to plausibly allege

10   reasonable efforts to protect its trade secrets.").

11   Quite to the contrary, tinyBuild has taken actions in this litigation, which the

12   Court may take under consideration under judicial notice, with the explicit

13   intention that the source code at issue be *excluded* as confidential information. On

14   September 27, 2019, Nival filed a motion for protective order. Docket No. 21. In

15   that motion, Nival sought to allow the source code to be subject to the protective

16   order because (1) the unrestricted release of the source code to tinyBuild through

17   discovery would moot a large portion of this litigation and (2) the source code

18   contains Nival's own proprietary trade secrets which were developed prior to

19   entering into the Agreement and which were used to build the source code for the

20   Project (see Section 1.4 of the Agreement).

21   tinyBuild, however, explicitly objected to allowing any source code ***that was***

22   ***related to the Project*** from being covered by the protective order, which would

23   essentially permit unlimited disclosure of the source code. Specifically, in

24   tinyBuild's proposed protective order, tinyBuild proposed that only "source code

25   unrelated to the 'Product' as defined in the Development and Publishing

26   Agreement between tinyBuild and Nival (Dkt. 11-1)" be covered by the Protective

27   Order. Docket No. 21-3, p. 2. In opposing Nival's motion for protective order,

28

Nival's Motion to Dismiss

Boston Law Group, PC
825 Beacon Street, Suite 20, Newton MA 02459
617-928-1800

1  tinyBuild went so far as to claim that allowing the protective order to cover source

2  code related to the Project was "overly broad" and that "Nival has no basis to

3  assert confidentiality over [the] source code...."[3]  Docket No. 22, p. 8.

4      Because tinyBuild has not taken reasonable efforts to maintain the secrecy of

5  the source code, the source code is not a trade secret and accordingly there could

6  be no misappropriation of trade secrets.  Therefore, the cause of action should be

7  dismissed.

8          **C.    tinyBuild Has Failed to Properly Allege Misappropriation**

9      Even if the source code is deemed to be tinyBuild's trade secret as defined

10  under statute, tinyBuild has failed to properly allege misappropriation of the source

11  code under any of the definitions for misappropriation.

12      Half of the forms of misappropriation enumerated in the statute can be

13  summarily dismissed because there was no "improper means" under which Nival

14  came to possess the source code.  Because Nival developed the source code itself,

15  Nival never obtained the source code through "theft, bribery, misrepresentation,

16  breach or inducement of a breach of a duty to maintain secrecy, or espionage

17  through electronic or other means."  Wash. Code § 19.108.010(1).  *See*, *also*, 18

18  U.S.C. § 1839(6) (substantially similar definition of "improper means").  Because

19  there were no "improper means," there could not have been misappropriation

20  under its sub-definitions (a), (b)(i) or (b)(ii)(A) (see definition of misappropriation,

21  *supra*).

22      And because Nival developed the source code itself, Nival did not acquire

23  the source code "by accident or mistake," removing any possibility of

24  ────────────────

25  [3] Again, Nival's primary purpose of seeking coverage for the Product's source
   code under the Protective Order was to ensure that the discovery process was not
26  used as a means to gain access to what Nival maintains tinyBuild has no right
   because tinyBuild failed to pay Nival for its work.  *See*, *generally*, Nival's
27  Counterclaims, Docket No. 11.

28                                          Boston Law Group, PC
   Nival's Motion to Dismiss           825 Beacon Street, Suite 20, Newton MA 02459
                        9                         617-928-1800

misappropriation under definition (b)(iii), nor did Nival derive it from some other person with a duty to tinyBuild, halting any relief under definition (b)(ii)(C).

That leaves tinyBuild with potential relief solely under definition (b)(ii)(B), which defines misappropriation as "Disclosure or use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."

As already stated above, there were no circumstances giving rise to a duty to maintain secrecy or limit use because the explicit Agreement between the parties did not in fact include such limitations.

But, beyond that, tinyBuild has not plausibly alleged that Nival disclosed or used the source code beyond that which was authorized under the Agreement.  The *only* allegation regarding disclosure or use of the source code beyond that authorized under the Agreement is that "[o]n information and belief, NIVAL also retained tinyBuild's source code for purposes unrelated to the product, including work for third parties."  FAC, ¶ 53.

However, this allegation fails to satisfy the pleading standards set forth in *Ashcroft v. Iqbal*.  The allegation presents nothing more than a "sheer possibility that [Nival] has acted unlawfully" and is just "merely consistent" with Nival's liability, stopping short of providing any factual allegations that support the legal conclusion.  556 U.S. at 678-79.  This allegation was included in the FAC for no purpose other than to proffer a conclusion vaguely consistent with the cause of action with no factual basis.  Moreover, the allegation does not even go so far as to

say that Nival has *actually* used or disclosed the source code, only that Nival is retaining it for a *possibility*, leaving it far from the line drawn in *Iqbal*.[4]

Paragraph 53 also contains an allegation that Nival "retained the source code for purposes of extracting additional funds from tinyBuild," yet there is no plausible way to read this allegation as misappropriation because "retaining" purported trade secrets cannot be deemed to be misappropriating them, particularly in the context that Nival was seeking payment for its services before delivering possession of the source code.  Nival neither disclosed nor used the source code – it only retained it subject to being paid for having developed it.  Mere possession of the source code by Nival – source code which Nival developed and which tinyBuild has never seen – cannot reasonably be considered a violation of confidentiality or a misappropriation of a trade secrets.

Accordingly, tinyBuild has failed to allege a cause of action for misappropriation because there was, in fact and in law, no misappropriation. Therefore, the cause of action for misappropriation should be dismissed.

## IV.   The Cause of Action for Conversion is Barred by the Economic Loss Rule

tinyBuild alleges that Nival committed the tort of conversion by willfully retaining possession of the source code (that Nival developed itself).  FAC, ¶ 8, 57-59.  However, tinyBuild's own allegations in the First Amended Complaint are that its rights to the source code arise out of the Agreement (though Nival disputes that tinyBuild has *any* rights to the source code).  FAC, ¶ 56.

---

[4] Nival notes that voluminous written and document discovery has already been completed in this case and that if there was evidence of improper use or disclosure, tinyBuild could have included it in the FAC.  However, because there is no such evidence, tinyBuild has plead non-specific allegations "on information and belief."

Boston Law Group, PC
825 Beacon Street, Suite 20, Newton MA 02459
617-928-1800

In these cases, where a claimant's purported rights arise from a contract without any independent duty, a claimant cannot maintain a cause of action under tort because it is barred by, as it is known in Washington, the economic loss rule. "The economic loss rule applies to hold parties to their contract remedies when a loss potentially implicated both tort and contract relief....  The rule prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract because tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Alejandre v. Bull*, 159 Wash.2d 674, 681-82 (2007) (multiple internal quotation marks and citations omitted).  *See, also*, *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash.2d 380, 389 (2010) ("An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract....  When no independent tort duty exists, tort does not provide a remedy.").

In this case, tinyBuild itself alleges that Nival developed the source code itself (FAC, ¶ 8) and that tinyBuild's rights to the source code, to the extent they exist at all, arise from the Agreement (FAC, ¶ 56).  There is no independent tort duty alleged, nor can one plausibly be read into the First Amended Complaint.

Quite simply then, because tinyBuild's purported right to receive the source code stems solely from a contract, tinyBuild cannot maintain a separate cause of action for conversion against Nival because it is barred by the economic loss rule. Accordingly, the cause of action for conversion must be dismissed.

## V.   Conclusion

As detailed above, tinyBuild's cause of action for misappropriation of trade secrets should be dismissed because there are no protectible trade secrets at issue in this case and misappropriation was not properly alleged.  Furthermore, tinyBuild's cause of action for conversion is barred by the economic loss rule and must also be

1   dismissed.  Accordingly, Nival hereby respectfully requests the court dismiss the

2   Fourth and Fifth Causes of Action in the First Amended Complaint.

3

4   Respectfully submitted,
    Nival International Limited,

5   By its Attorneys,

6   /s/ Valentin Gurvits

7   Valentin Gurvits, Esq. (*pro hac vice*)

8   Boston Law Group, PC
    825 Beacon Street, Suite 20

9   Newton Centre, Massachusetts 02459

10  Tel: 617-928-1804
    Email: vgurvits@bostonlawgroup.com

11

12  Matthew Shayefar, Esq. (*pro hac vice*)
    Boston Law Group, PC

13  925 N La Brea Ave
    West Hollywood, California 90038

14  Tel: 323-948-8101

15  Email: matt@bostonlawgroup.com

16
    Philip P. Mann, Esq. (WSBA No. 28860)
17  Mann Law Group PLLC
    1420 Fifth Avenue, Suite 2200
18  Seattle, Washington 98101
    Tel: 206-463-0900
19  Email: phil@mannlawgroup.com

20

21  Dated: April 3, 2020

22

23

24

25

26

27

28
    Nival's Motion to Dismiss

Boston Law Group, PC
825 Beacon Street, Suite 20, Newton MA 02459
617-928-1800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Service**

I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.


Dated:        April 3, 2020            /s/ Philip P. Mann

Nival's Motion to Dismiss

Boston Law Group, PC
825 Beacon Street, Suite 20, Newton MA 02459
617-928-1800