THE HONORABLE THOMAS S. ZILLY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| tinyBuild LLC,<br>   Plaintiff/Counterclaim Defendant,<br>v.<br>Nival International Limited,<br>   Defendant/Counterclaim Plaintiff<br>and<br>Sergey Orlovskiy,<br>   Defendant. | Case No.: 19-cv-00805-TSZ<br><br>**NIVAL INTERNATIONAL LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Noted for Consideration:<br><br>May 1, 2020 |

    Defendant/Counterclaim Plaintiff Nival International Limited ("Nival"), by and through its undersigned counsel, hereby replies in support of its Motion to Dismiss ("Motion") and in response to Plaintiff/Counterclaim Defendant tinyBuild LLC's ("tinyBuild") Opposition ("Opposition") to the Motion.

### I. Legal Standard

As an initial matter, tinyBuild misstates the current legal standard for motions to dismiss, citing to cases that were issued prior to the U.S. Supreme Court's landmark ruling in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See*, Opposition, p. 3 (citing *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) and *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998)).

tinyBuild also cites to the case *F.L.B. v. Lynch*, 180 F.Supp.3d 811, 817 (W.D. Wash. 2016), for the proposition that a complaint is not required to "provide detailed factual allegations" – but that is an incomplete citation to the standard. While it may be true that a complaint need provide every detail related to an allegation, the allegations must still be sufficiently detailed and more than labels and conclusions. As that case states:

> Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id*. In ruling on a motion to dismiss, the Court must assume the truth of a plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the operative pleading sufficiently state a "plausible" ground for relief. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

*F.L.B.*, 180 F.Supp.3d at 817. Nival submits that tinyBuild has failed to satisfy these standards and the Motion should be granted.

## II. The Misappropriation Claim Should be Dismissed

### A. tinyBuild Failed to Adequately Allege Reasonable Efforts to Maintain Purported Trade Secrets

Nival argues that tinyBuild failed to adequately allege that it took reasonable efforts to maintain the secrecy of its alleged trade secrets because there was no confidentiality obligation between Nival and tinyBuild that applies to the source code alleged to have been misappropriated and because tinyBuild, in this very litigation, refused to allow the source code to be deemed confidential in the protective order entered into the case.

tinyBuild first responds that because whether reasonable precautions have been taken to maintain secrecy is a question of fact, it should not be decided on a motion to dismiss. Opposition, p. 4. However, whether or not it is a question of fact does not relieve tinyBuild of its burden of plausibly alleging facts that would indicate more than mere speculation of a right to relief. A claimant must plausibly allege that it took reasonable efforts to maintain the secrecy of the putative trade secrets and failure to so plausibly allege is a basis upon which to dismiss a cause of action for misappropriation. *See*, *e.g.*, *Carr v. AutoNation, Inc.*, 789 F.App'x 129, 130 (9th Cir. 2020) (affirming dismissal of misappropriation claim because claimant failed to plausibly allege that he took reasonable efforts to maintain secrecy of business plan); *Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, 2016 WL 9045621, at *7 (C.D. Cal. Jan. 28, 2016) (dismissing cause of action for misappropriation because claimant did not allege that it took reasonable efforts to maintain the secrecy of its alleged trade secrets). tinyBuild has failed to allege reasonable efforts to maintain the secrecy of the source code.

tinyBuild mainly relies on the confidentiality provision of the agreement between the parties, but a clear reading of that provision, based on its actual words, as already briefed in the Motion, makes clear that the source code is not covered by

the confidentiality provision there. tinyBuild's Opposition tacitly acknowledges that the confidentiality provision does not reach the source code by noting that "literally" the contract does not support its position – but that is exactly the purpose of a contract: to put things literally and legally so that the parties know their rights and obligations.

tinyBuild also claims that trade secrets can still exist without a written agreement, citing the case *Regal W. Corporation v. Nguyen*, 412 F.Supp.3d 1305, 1315 (W.D. Wash. 2019), for the proposition that allegations of an "understanding" of confidentiality is sufficient where there is no written contract. Opposition, p. 5. First, this is yet another tacit acknowledgement that the written agreement between the parties does not cover the source code tinyBuild alleges was misappropriated. Nonetheless, the *Regal* case is in fact a perfect comparison to this case because in *Regal* there was no written agreement at all, whereas in this case tinyBuild only *now* claims that there was a "understanding" in *addition* to a written agreement. tinyBuild is in effect asking this Court to believe that even though the parties went through the process of putting together an express written contract, tinyBuild was relying on an unwritten "understanding" that the source code would be confidential, even though the actual confidentiality provision between the parties says no such thing. This is not a plausible allegation. Moreover, it is completely at odds with the merger clause in the Agreement, Section 15(f), which states that "This Agreement constitutes the complete and entire agreement of the parties...." Accordingly, tinyBuild has not plausibly alleged that it took reasonable measures to secure the confidentiality of its alleged trade secrets.

Finally, though tinyBuild claims that Nival grossly mischaracterized tinyBuild's objection to Nival's proposed protective order, it is in fact tinyBuild grossly mischaracterizing its actions. tinyBuild claims that it was only attempting

to keep the source code from being designated as "Attorney's Eyes Only." Opposition, pp. 6-7. That is simply not the case. Nival opposed allowing the source code to be designated whatsoever under the protective order – whether as simply "Confidential" or "Attorney's Eyes Only." Here is tinyBuild's redline of the proposed order which explicitly carves out the source code from confidential designation (blue markups are tinyBuild's counsel's changes, green highlight added for emphasis):

> 10   "Confidential" material shall include the following documents and tangible
> 11   things produced or otherwise exchanged: ~~personnel lists,~~ source code unrelated to
> 12   the "Product" as defined in the Development and Publishing Agreement between
> 13   tinyBuild and Nival (Dkt. 11-1), ~~internal business practices,~~ non-public financial
> 14   information, customer lists, employee files, ~~internal business information,~~ and
> 15   proprietary, non-public development methods.

Docket No. 21-3, p. 2. *See, also,* tinyBuild LLC's [Proposed] Protective Order, Docket No. 22-1, p. 1 ("'Confidential' material shall include ... source code *unrelated* to the 'Product' ...." (emphasis added)). Once again, this is tinyBuild explicitly stating that any source code *related* to the Project should *not* be considered confidential under the protective order. It is exactly the source code related to the Project that tinyBuild alleges was misappropriated.

**B.   tinyBuild Did Not Adequately Plead Misappropriation**

tinyBuild first argues that it did adequately plead misappropriation because of two allegations in the First Amended Complaint. These allegations are not actually in the First Amended Complaint, but are references to communications that tinyBuild attached to its motion for leave to amend its complaint. Opposition, p. 2 ("Through discovery, tinyBuild learned that after tinyBuild terminated the Agreement, Nival intentionally withheld tinyBuild's proprietary, trade secret source code for purposes of both extorting additional funds from tinyBuild and

creating a tech stack to use with third parties. Dkt. 31"). Of course, the Court must limit its review of a motion to dismiss based on the four corners of the complaint and those documents directly referenced therein. But to the extent that this Court would allow tinyBuild to rely on those documents in its opposition, it will see that those documents simply do not actually say what tinyBuild alleges.

tinyBuild claims that "Nival admitted ... that Nival had gotten both money and a 'tech stack' using tinyBuild's IP, which Nival intended to use for other clients and projects" and that Nival retained the code "specifically for the purposes of extorting money from tinyBuild." Opposition, p. 7. These are in reference to communications in the record at Docket Number 34-3, pages 4, 6, and 8, and, without tinyBuild's false gloss, those communications among Nival's personnel are as follows:

- "Do I understand correctly that when they ask for the sources I drag it out and wait for Ilya to prepare an addendum with terms that insure us against leaving the project without RevShare that they will refuse to sign now."

- "I've reread the contract carefully. We are not violating anything till April 1st, so it's better to tell them now that the development is not stopped, all their statements are baseless, so they should either wait till April 1st, or agree to the termination terms we offered back in January. And at the end of March send them the build we have, notify them of milestones delivered and invoice them. Moreover, we officially inform them that development has continued since that build, which means we're developing past beta version. I assume they are fast-tracking the process now and pushing us because according to clause 14d of the contract, after the beta we get all royalties, and they can't just withdraw from the contract on a whim."

- "In total, worst case scenario for us – we survived 2018 on their money and made ourselves a tech stack. For the money they paid, they got the sources

with which they can theoretically finish the project with another team. We are potentially losing the profits if the project is successfully [sic], and they'll potentially have to spend a lot more time and money to get it to launch."

*Nothing* in these communications indicates an intent (and much less actual action) to use the source code for other clients or projects or that Nival was trying to extort money from tinyBuild. Quite to the contrary, it shows Nival concerned that tinyBuild is going to take the source code and refuse to share the revenues from the project, all while Nival was still intending to send the project in March.

Accordingly, tinyBuild's allegations are, in themselves, insufficient as a matter of law because they present nothing more than a "sheer possibility that [Nival] has acted unlawfully" that is just "merely consistent" with liability. *Iqbal*, 556 U.S. at 678-79. But even if this Court was to look beyond the insufficient allegations in the First Amended Complaint, and look at the additional documentation upon which tinyBuild relied, it would still find no substance to the claims.

Lastly, tinyBuild alleges that the case *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 436, 971 P.2d 936, 941 (1999), stands for the proposition that there can be misappropriation simply where a party retained purported trade secrets. tinyBuild claims that the case affirmed the trial court's finding that former employees misappropriated "by retaining [trade secrets] after plaintiff demanded their return." Opposition, p. 11 (citing *Rucker*, 137 Wash.2d at 432).

tinyBuild both misstates the Washington Supreme Court's holding and only selectively quotes from the trial court's findings, ignoring the actual extent of those defendants' misappropriations. First, the sole issue before the Washington Supreme Court, and the sole issue on which that court affirmed the trial court, was on the question "Does information which has been determined to be a trade secret,

under the definition in the Uniform Trade Secrets Act, lose its protected status because it has been committed to memory rather than taken in written form?" *Rucker*, 137 Wash.2d at 436. The court accordingly was not asked, and therefore did not provide, any ruling on whether simply *retaining* trade secrets constitutes misappropriation.

In any case, the *Rucker* case involved *so much more* than just retaining trade secrets, contrary to tinyBuild's inference. Specifically, the trial court in that case found that the defendants in fact used the trade secrets they retained when they used the customer lists to solicit customers. Specifically, the trial court found that "Rucker, Rieck and Kiser all solicited the customers of plaintiff and many of those customers transferred their business to the defendants." *Id.* at 433. Accordingly, the *Rucker* case does <u>not</u> in any way affirm that a misappropriation claim can stand solely on the retention of trade secrets.

And of course, the very statutes which control do not in any way allow for a misappropriation claim based solely on retention – misappropriation requires "disclosure or use." *See* Motion, pp. 5-6, 9-10.

More on point is the case *Edifects Inc. v. TIBCO Software, Inc.*, 756 F.Supp.2d 1313 (W.D. Wash. 2010), where the court explicitly found that even if a party retains a claimant's trade secrets, the simple allegation that they *could* improperly use it is too speculative to allow the claim to stand. There, the Court explained:

> Although several TIBCO employees know Edifecs's trade secrets, and these employees might work with Foresight in the future based on TIBCO's recent acquisition of the company, there are no facts alleged to suggest that these employees are using or threatening to use Edifecs's trade secrets in a way that amounts to misappropriation. As supported by counsel's statements during oral argument, Edifecs did

Nival's Reply i/s/o Motion to Dismiss

8

Boston Law Group, PC
825 Beacon Street, Suite 20, Newton MA 02459
617-928-1800

not know any facts that support an inference of misappropriation. Without something more tangible, the Court finds the complaint too speculative to state a viable claim for relief.

*Id.* at 1320-21.

Accordingly, retaining purported trade secrets that a party developed itself cannot constitute misappropriation, and tinyBuild's cause of action for the same must be dismissed.

### III. Whether it is Called the Economic Loss Rule or the Independent Duty Doctrine, tinyBuild's Conversion Claim is Still Barred by it

tinyBuild claims that "Washington abandoned the economic loss rule," suggesting that Nival's basis for dismissing the conversion claim should be disregarded. Opposition, p. 8. tinyBuild's claim is incorrect. Washington did not abandon the rule, but only criticized its name for false implications about its scope. But at no time in its Motion did Nival argue that the falsely implied scope of the rule should be applied in this case, and instead cited the scope of the rule from the very court cases that criticized its name. *See* Motion, p. 12 (quoting *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash.2d 380, 389 (2010)). Accordingly, tinyBuild's claim that "the doctrine is no longer as rigid as Nival suggests" is a strawman argument. Opposition, p. 8.

Next, tinyBuild argues that a conversion claim could proceed even if there is a contract, relying on the unpublished case *Fuji Food Products, Inc. v. Occidental, LLC*, 2018 WL 6310090, at *6 (Wash. Ct. App. Dec. 3, 2018), *rev. denied*, 193 Wn.2d 1019, 448 P.3d 67 (2019), for the proposition that "the duty not to steal someone else's property is related to, but independent of, any duties in the parties' [contract]." Opposition, p. 12. To the extent that this unpublished case has any

precedential value,[1] it is easily distinguished and in fact acts as a useful comparison to this case.

*Fuji* involved a commercial lease wherein a tenant brought a breach of contract claim and conversion claim against its former landlord, who refused to allow the tenant to return to the premises and remove its cooler rooms. The tenant filed suit for breach of contract on numerous breaches (including for the landlord failing to return the security deposit) and conversion on the improper retention of the cooler rooms that the tenant had brought to the property itself. The appellae court allowed the conversion claim to stand because nothing in the lease, which the breach of contract claim was based on, created any change in ownership of the cooler rooms from one party to the other (in either direction), and so the conversion claim was wholly independent from any rights or responsibilities under the lease. In fact, the court went into a significant examination of how the lease did *not* affect the ownership of the cooler rooms in any manner. *Id.* at *6-7.

This case is easily distinguishable because the only reason tinyBuild claims that it has rights to the source code is because the *contract* between it and Nival purportedly states that it has rights. tinyBuild has no independent ownership rights over source code that Nival itself developed. Quite to the contrary, under the Copyright Act, "title vests initially in the author or authors of the work." 17 U.S.C. § 201(a). In this case, the author of the source code was Nival, and therefore the owner of the source code would be, absent other considerations, Nival.

---

[1] The General Rules of the Court of Washington, Rule 14.1 states: "Unpublished opinions of the Court of Appeals are those opinions not published in the Washington Appellate Reports. Unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court. However, unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate."

tinyBuild's claim to ownership over the source code therefore arises solely from the Development and Publishing Agreement between the parties – the same contract under which tinyBuild brought its cause of action for breach of contract alleging that Nival breached by not releasing the source code. tinyBuild admits the same in its Opposition, effectively admitting that it has no independent rights to the source code. *See* Opposition, p. 12 ("In fact, the Agreement clearly grants tinyBuild ownership of the source code."). tinyBuild confusingly argues that there is nothing in the Agreement which transfers ownership *from* tinyBuild *to* Nival – but the point is that the Agreement is the means, if any, that would transfer ownership *to* tinyBuild *from* Nival. And if there was no contract to make that transfer of ownership, tinyBuild could have no rights whatsoever over the source code, and accordingly tinyBuild has no rights to the source code independent of the contract. And because tinyBuild has no rights to the source code independent of the contract, its cause of action for conversion is barred by the economic loss rule/independent duty doctrine and must be dismissed.

## IV.   Conclusion

As set forth above and in Nival's Motion, tinyBuild's causes of action for misappropriation and conversion must be dismissed.

Respectfully submitted,
Nival International Limited,
By its Attorneys,

/s/ Matthew Shayefar
Matthew Shayefar, Esq. (*pro hac vice*)
Boston Law Group, PC
925 N La Brea Ave
West Hollywood, California 90038
Tel: 323-948-8101
Email: matt@bostonlawgroup.com

Valentin Gurvits, Esq. (*pro hac vice*)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel: 617-928-1804
Email: vgurvits@bostonlawgroup.com

Philip P. Mann, Esq. (WSBA No. 28860)
Mann Law Group PLLC
1420 Fifth Avenue, Suite 2200
Seattle, Washington 98101
Tel: 206-463-0900
Email: phil@mannlawgroup.com

Dated: May 1, 2020

**Certificate of Service**

1. I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

Dated: May 1, 2020          /s/ Philip P. Mann